Common Pleas Court of Hamilton County.

STATE EX REL, STANLEY C. ROETTINGER V. CITY OF CINCINNATI.

Decided September 7, 1933.

*Roy L. Struble* and *Sol Goodman,* for plaintiff.

*John D. Ellis,* city solicitor and *Ed. F. Alexander,* ass't. city solicitor, for defendant.

MORROW, J,

This is a taxpayer's suit which the prosecuting attorney of Hamilton county refused to institute.

The county of Hamilton contains some five hundred eighty-nine thousand three hundred fifty-six people, and its county seat, Cincinnati, some four hundred fifty-one thousand one hundred sixty. A Municipal Court was established in Cincinnati, and the distance from the City Hall to the Court House, and the cramped accomodations in the City Hall, available for the Municipal Courts, impelled some prominent lawyers, and finally the Lawyers' Club itself, to initiate a movement to house the civil branch of the Municipal Court in the county Court House. This movement gained in strength, was approved by the press, at

least in part, and apparently was accorded public approval.

The director of Public Service of Cincinnati was authorized and empowered by council to negotiate for the lease, and this was done by ordinance. A later ordinance was passed by council adopting and ratifying the lease agreement between the county commissioners and the director of public service which had been entered into pursuant to the first ordinance. By resolution spread on the minutes in the office of the county commissioners those officers had agreed to enter a contract of lease with the director of public service of the city. That agreement was consummated on Febuary 15, 1924. The agreement was for a term of five years and provided for occupancy of nine rooms in the Court House by the civil division of the Municipal Court, and the consideration for the lease was one dollar per annum.

The plaintiff herein states that the lease was without authority on the part of the county commissioners, was contrary to the express provisions of the laws of Ohio, and in total disregard of the rights of plaintiff, and all other taxpayers of Hamilton county, Ohio. He states further that the taxpayers of the county have suffered a great financial loss by reason of this lease, and he avers that the burden of housing and accomodating the Municipal Court of Cincinnati is placed upon the city, by law, and not upon the county.

Plaintiff asks for an accounting "of all benefits received by said defendant, and for a finding as to the reasonable value for the use of the property for the period from the beginning of the lease until the filing of the plaintiff's petition, and for all other relief in equity or law that is proper in such cases."

A demurrer was filed to the petition and the same was overruled by another judge of this court.

We do not care to review the questions raised by the demurrer, but since the ruling on the demurrer has been referred to repeatedly by both counsel in argument, and in their briefs, it seems proper to state now that we disagree with the ruling of the learned judge who decided the demurrer.

However, the matter is now before us on petition and answer. The answer is, in substance, a denial that the county taxpayers' rights have been disregarded, that they suffered a great financial loss, and it avers, on the other hand, that the contract was made for public benefit.

We are disregarding the question as to whether this is an action in *quantum meruit,* or in accounting, or whether the technical objections to plaintiff's petition were well taken or not. In either event, we are holding, as a matter of law, and/or equity, that the plaintiff should not recover.

Because of the nature of the question involved it seems proper to review briefly the various steps which had been taken by the county and the city with reference to this dollar a year, five year lease, and their authority to bring such a lease into being.

The county can contract with municipalities for the use of space in a Court House for Municipal Courts. See Section 2419-2, General Code. The city derives authority to contract with the county commissioners for quarters in county buildings for Municipal Courts from Section 3624, General Code.

Neither counsel has called attention to another statute which seems to us to have some general bearing on this matter, in view especially of the claim of plaintiff that the county commissioners' action was unconscionable and in disregard of the rights of citizens of Hamilton county who are not citizens of the city of Cincinnati. I refer to Section 2433-1, General Code, which reads as follows:

"USE OF COUNTY BUILDINGS FOR PUBLIC LIBRARY. The county commissioners of any county may by resolution permit the use of public grounds or buildings under their control for public library or for any other public purpose, upon such terms or conditions as they see fit to prescribe."

I take it that the Court House is "a building under their control," and also that the establishment of a civil branch of the Municipal Court in a county Court House subserves "a public purpose" even from the standpoint of residents outside the city, because of the convenience and efficient dispatch of business which is brought about as to some eighty per cent of the population of the county by the establish-

ment of the civil Municipal Courts in the Court House. We will advert later more at length to this last proposition.

In relation to the construction of the contract the following is pertinent: "it is the province of the county commissioners to make contracts for the county." See 11 Ohio Jurisprudence, paragraph 236, page 507, and cases cited therein. Also:

"It has been laid down, as a rule to be observed in the construction of a contract made by county commissioners, that no dishonest purpose can be ascribed to the county. The people as a body can act toward one of their number only in honesty and fairness."

See 11 Ohio Jurisprudence, paragraph 235, on page 507, and cases cited thereunder. Also:

"Where a contract is clearly within the powers conferred upon the county commissioners, it will be presumed, in the absence of any showing to the contrary, that the commissioners, in making it, exercised their powers in a lawful manner."

See also *Hamilton County* v. *Noyes,* 35 O. S. 201.

It might be noted, although counsel did not so argue or allege, that the contract in question here is for a term of five years, a greater length of time than the length of the official terms of the county commissioners who signed the contract in behalf of the county. In passing we might quote again from 11 Ohio Jurisprudence, page 509, paragraph 237:

"It has been said that there is no rule of law prohibiting public officials, such as county commissioners, from entering into contracts performance of which will extend beyond their official terms, and that, in the absence of statutory limitations, such a contract may continue for such time as, under the circumstances, is reasonable."

In this connection see the case of *State ex rel McGoldrick* v. *Lewis,* 12 O. D. N. P. 46.

The presumption is that public officials do their duty. See *Board of Supervisors* v. *Udall,* 1 Pac. (2nd Series) page 343.

We now find in respect to a contract of lease entered into

between a city "the county seat", and the county, which contract was entered into at the instance of members of the bench and bar, litigants, and certain of the general public, that the claim is made now that the inadequacy of the consideration, calls for an accounting and the payment of $114,529 by the city to the county. A rather bald statement of plaintiff's claim is that the county rented to the city, for the price of a dollar a year, certain office space which is reasonably worth $114,529, rental for the term of the lease, and that such a rental agreement is in total disregard of the rights of the taxpayers of Hamilton county who live without the city of Cincinnati.

Counsel can hardly urge fraud in view of the circumstances—an open agreement made by the parties concerned, after months of discussion, at the instance of many public spirited and high minded citizens. He states, however, the taxpayers of Hamilton county, outside of Cincinnati, are paying for the housing of an institution peculiarly of and for the city of Cincinnati, and to that extent the contract is in disregard of their legal rights.

His premises are faulty. In the first place there are other considerations than the one dollar expressed in the contract, and the court so finds as a fact, from the evidence in the case. Those considerations may be proven, though not set forth in the contract in this case. They were set forth particularly in the testimony of Judge Joseph H. Woeste, a member of council of the city of Cincinnati, and a former judge of the Municipal Court of Cincinnati, who appeared as a witness for the defendant.

The law is well settled as to this proposition. As a general rule the recitals of a written instrument, as to the consideration, are not conclusive, and it is always competent to inquire into the consideration and show by parol or other extrinsic evidence what the real consideration was. See *Grover* v. *Grover*, 65 O. S. 442; 62 N. E. 1044; *Burchardt* v. *Burchardt*, 35 O. S. 261, and many other Ohio authorities cited in 17 Cyc., page 648.

Thus it may be shown that the real consideration was in fact greater than that which was expressed in the instrument itself. See *Hicks* v. *Cubbon*, 4 O. D. Reprint, page 408; 2 Cleveland Law Reporter, page 121, and other cases cited in 17 Cyc., page 648.

Also it may be shown "that there was some other consideration in addition to that set forth." See *Vail* v. *Mc-Millan,* 17 O. S. 617, and other cases cited in 17 Cyc. 648. Especially when the consideration set forth is only nominal. See *Davenport* v. *McCampbell,* 17 Ben Monroe (Ky.) p. 38, and other authorities cited under 17 Cyc. 648. See also 13 Corpus Juris p. 367, under the head "Contradicting statement of consideration," and 9 Cyc. p. 368, upon the same subject.

It is not far fetched to say that the consideration herein is bound up in the following situations and facts—though their connection with the contract may appear broad, general and somewhat shadowy at first blush.

Section 1558-6, paragraph 2, General Code, authorizes the civil branch of the Municipal Court to entertain certain actions which were already within the purview of the Common Pleas Court. The result of this was to take a certain load of litigation from the Common Pleas Court, and can be urged as a factor making for public welfare, that is to say, the housing of such a court in the Court House is a benefit to the public at large in the sense that the advantage of a consolidation of all civil courts in the county Court House is a public benefit, which can not be gain said. In the light of some of the cases where consideration not measurable by money has been upheld, this does not seem to be unreasonable or quixotic. In short, the county commissioners are not disregarding the rights of some twenty per cent of the taxpayers of the county when they agree to house, for an expressed nominal consideration, a court which serves the other eighty per cent of the taxpayers directly, and which serves those twenty per cent indirectly, by affording them better and quicker access to their own county courts. The county commissioners might well say to the county taxpayers "you might be a witness, or desire to bring a suit in the Municipal Court in Cincinnati against a citizen of that city, and it is an advantage to you to have that court in the Court House where you are accustomed to go to pay your taxes, and attend your litigation in the other courts. Furthermore, this Municipal Court, if properly functioning, takes a great load of smaller litigation from the Common Pleas Court, and if it would help that court to accelerate

and facilitate its business, we are indirectly doing county taxpayers a good turn as well as the city tax payers."

The consideration in a contract need not be a thing of pecuniary value, or even reducible to money value. In a general way the following case may be of interest. *City of Norfolk* v. *Southern Railroad Co., et al.*, 83 S. E. 1085. (The Superior Court of Appeals of Virginia) decided Janu-12, 1915, syllabus 4:

"The benefits to a city from the location of a deep water terminus and passenger station on property leased from the city by a railroad corporation was a sufficient consideration for the lease."

A general statement as to these matters in 13 C. J., paragraph 158, page 321, is as follows:

"The benefits accruing the property owners from the location of railroads, or railroad station, public buildings, military headquarters or manufacturing plants or other private buildings constitute a valuable consideration for the contracts with reference thereto."

Instances of unusual and even fantastic considerations which were held good consideration—though not reducible to a money value, and as between private individuals are set forth in 13 C. J. paragraph 163, at page 324. For instance, one man promised to pay another for the following consideration, that the latter would agree to enter the military service of the British Empire. The consideration that one abstain from the use of liquor and tobacco for a certain period. A divorced wife agreed to conduct herself with sobriety, in a respectable, orderly, and virtuous manner, and this was held a good consideration, although the ties between the parties had long since been severed. A promise to change one's residence; a promise to stay in a particular city, and even a promise to attend the promisees funeral have been held good considerations as between private parties.

In the light of these and many other instances it seems the consideration not expressed in this lease is ample and reasonable, though not capable of accurate measurement in terms of money.

We have quoted the Statute 2433-1, which seems to have been ignored by the plaintiff. This statute seems to give the county commissioners free rein in making such contracts, as in the instant case, and it might be argued under this statute that the one dollar consideration alone is sufficient. The public purpose subserved in the consolidation of all the civil courts in the Court House for the convenience of lawyers, litigants and witnesses. The mere fact that the public has a right to expect to find court rooms in the Court House, and not in the City Hall, is a consideration. For the purpose of this contract, this public purpose may be a consideration, and we so find. We have said the fact that such a consideration is not capable of being measured in terms of money, that it is in a sense difficult of analysis with reference to immediate and obvious utility, does not make it any less a consideration.

Public matters must be viewed in a large way. The taxpayers of Hamilton county—without Cincinnati—are interested in the convenient administration of justice, even though that convenience may not ever be brought home to them personally.

In this connection it is interesting to note the legislature has viewed the matter in a large way. The salaries of the Municipal Court judges are paid in part by the county of Hamilton, and this has been approved by the Supreme Court in the case of *State ex rel Dempsey, Chief Justice Municipal Court of Cleveland* v. *Zangerle, Auditor,* 114 O. S., page 435, date March 30, 1926.

The legislature has indicated thus its recognition of the county's interest in Municipal Courts many times. An examination of the statutes will reveal that in the establishment of twenty-eight Municipal Courts in Ohio, including Cincinnati, the legislature has provided for apportionment of certain salary expenses of the officers thereof, as between the cities and counties. In only four instances that we have found has there been a failure on the part of the legislature to provide for county participation in Municipal Court expenses. It is only fair to say, however, in this connection, that the criminal jurisdiction of the Municipal Courts, which of necessity must entertain matters involving offenses

against the state, is ample justification for the levy of part of the expenses upon the county, which, as has been said:

"Is a subdivision of the state, organized by itself for judicial and political purposes. In other words, it is a mere political organization of certain of the territory within the state, particularly defined by geographical limits. It is not a legal person. Neither is it a separate political entity. Nor is it invested with any of the attributes of sovereignty. It is rather a constituent part of the plan of permanent organization of the state government—a wholly subordinate political division or instrumentality, created and existing almost exclusively with a view to the policy of the state at large, and serving as a mere agency of the state for certain specified purposes." 11 Ohio Jur. page 240, paragraph 4.

See also *State ex rel Dorfler* v. *Price*, 101 O. S. 50; 128 N. E. 173.

However, in this connection attention is invited to the act establishing the Superior Court of the city of Cincinnati which is to be found on page XIII, Cincinnati Superior Court reports, p. 1-2 (Vol. 1-2) Handy, wherein the legislature set up a purely civil court with a jurisdiction confined to the city of Cincinnati. This civil court was by that act served by the clerk of Court of Common Pleas (as is our present Municipal Court) by the county sheriff and other county officers, and the county commissioners by that act were charged with the duty of providing accomodations for that court.

This court, which enjoyed a famous existence from 1854 to 1926, whose bench was adorned by such men as Alfonso Taft, William H. Taft, Gholson, Harmon, Force, and Noyes, was recognized by the legislature, in the act above mentioned, as subserving a public purpose, from the standpoint of the county. On no other theory can the imposition of duties with respect thereto by county officers, the responsibility of the county commissioners to provide its accomodations, and the part payment of the salaries of its judges by the state, be defended. It was a civil court, but, like the civil branch of the municipal court, we are concerned with now, it relieved the load of work then burdening the Common Pleas Court, and in so doing, performed a county as well as a city function, though indirectly.

During the seventy-two years of existence of the Su-

perior Court, whose position with respect to the county taxpayers was similar to that of the civil branch of the Municipal Court, as we have shown, it is worthy of remark that no Citizen Ampt, representing himself or a county taxpayer, raised any question as to the propriety or legality of the financial or other burdens imposed upon the county by the legislature in the Superior Court act.

I see no difference, in principle, between the legislature specifically fastening such a burden upon the county as the expense entailed by the Superior Court act, and granting the county commissioners authority to assume such burden by agreement, as in the instant case,—an agreement embodied in a contract with an expressed nominal consideration and an unexpressed consideration.

In passing, and merely as effecting the status of the Municipal Court since July 28, 1929, the statute effective on that date (1558-6a) as to the Municipal Court jurisdiction, makes the Municipal Court of Cincinnati, for certain purposes a county as well as a city court. This is interesting in view of the fact that the Municipal Court is still housed in the Court House, although the five year period of the contract now under consideration has lapsed.

In passing also it might be noted this court is confronted with the problem that in the event of rendering a judgment on any theory for the plaintiff, we would do so in the face of that body of statutory law embodied in Section 5675-33, General Code, and former Section 5660, General Code, which requires certification of all contracts prior to execution of the same.

The plaintiff asks us to render judgment for $114,000 against the city in *quantum meruit* or by process of equitable accounting upon the theory of *quasi* contract although no such indebtedness has been certified or acknowledged by the city.

In conclusion we are holding:

1.   The county was justified in entering into the contract with the city for the housing of the civil branch of the Municipal Court in the Court House.

2.   There was no fraud, unconscionably small consideration, or impairment of the rights of the county taxpayers,

as, for instance, in the case of *George Y. Perkins* v. *Reservoir Park Fishing & Boating Club, et al.*, 130 Ill. App. Court Rep. page 128.

3. The use of the county Court House for the civil branch of the Municipal Court of the city of Cincinnati is a use "for a public purpose," and the blanket provisions of Section 2433-1, General Code, are additional authority to the specific statute which permits the county to bargain with the city for the installation of the Municipal Court.

4. Viewed from a standpoint only of a contract the general welfare of the public of this county is subserved by the installation of the Municipal Court in the Court House, and this consideration, in addition to the one dollar, may be proven, and has been proved.

5. Such a consideration—accomplishing the consolidation of all the civil courts in the Court House, and other broad but general benefits to the public at large constitutes nevertheless a real and moving consideration as between a populous county seat—city, and a somewhat more populous county.

6. There are practical difficulties having their source in statutory law and the exigencies of city finances which seem to raise a barrier against any payment, on any theory, at this time by the city to the county of any sum of money not expressed in the contract, and which was requested by the plaintiff here.

The plaintiff should not recover on any theory, legal or equitable, in our opinion.